

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00102-CV

**IN THE INTEREST OF X.H.** and A.B.M., Children

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2021PA00042
Honorable Kimberly Burley, Judge Presiding

Opinion by:       Patricia O. Alvarez, Justice

Sitting:          Patricia O. Alvarez, Justice
                  Irene Rios, Justice
                  Liza A. Rodriguez, Justice

Delivered and Filed: July 20, 2022

AFFIRMED

In this parental rights termination case, the trial court terminated Mom's parental rights to her children X.H. and A.B.M.[i]  Mom challenges the legal and factual sufficiency of the evidence for the trial court's finding on the best interests of the children.[ii]

Because the evidence was legally and factually sufficient to support the trial court's findings under the elevated evidentiary standards, we affirm the trial court's order.

---

[i] We use aliases to protect the children's identities.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.
[ii] In this case, Mom is the only appellant; we limit our recitation of the facts to those relating to Mom and the children.

**BACKGROUND**

In January 2021, police responded to a report of domestic violence between Mom and her paramour, K.G. Mom and K.G. were in a physical altercation; when the police intervened, they also noted concerns about substance abuse by Mom, and the children were removed.

The Department created a service plan for Mom, which included a psychological evaluation, a drug assessment, submitting to recurring random drug testing, individual counseling, completing courses in parenting and domestic violence, and obtaining and maintaining stable housing and employment. The service plan was approved by the court, and it ordered her to comply with the plan.

Mom completed the psychological evaluation, but she did not complete many of the plan requirements including the drug assessment, all the required drug tests, or the required domestic violence course.

After a bench trial on the merits, the trial court found by clear and convincing evidence that Mom's course of conduct met the grounds in Family Code subsections 161.001(b)(1)(E), (N), and (O), and that terminating Mom's parental rights was in the children's best interests. The trial court terminated Mom's parental rights to X.H. and A.B.M., and it appointed the Department as the children's permanent managing conservator.

Mom filed a notice of appeal. She does not challenge the statutory grounds findings; she challenges only the legal and factual sufficiency of the evidence on the best interests of the children.

Before we address Mom's sole issue, we briefly recite the applicable evidentiary and appellate review standards.

**EVIDENCE REQUIRED, STANDARDS OF REVIEW**

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691 (Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The evidentiary standard[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review. We apply them here.

**BEST INTERESTS OF THE CHILDREN**

In her only issue, Mom argues the evidence was legally and factually insufficient to support the trial court's finding that terminating her parental rights was in her children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

**A.  Unchallenged Statutory Grounds Findings**

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support a parental rights termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.).

Here, the trial court found Mom engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children, she constructively abandoned the children, and she failed to comply with her Family Service Plan. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (N), (O). Mom does not challenge any of those findings, and we need not address them. *See* TEX. R. APP. P. 38.1(f), (i); *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019)

(requiring appellate courts to review grounds (D) and (E) "[w]hen a parent has presented the issue for appeal"). Instead, she challenges only the best interests finding.

## B.    Best Interest of the Child Factors

The Family Code statutory factors[5] and the *Holley* factors[6] for best interest of the child are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interests of the children.

The trial court heard the following testimony regarding the children's ages and vulnerabilities, Mom's course of conduct, and the children's placement.

## C.    Children's Ages and Vulnerabilities

At the time of trial, X.H. was five years old, and A.B.M. was three years old. Neither child was able to care for themselves, and they were living in a foster placement. During Mom's visits with them, which were supervised, the children did not obey her when she gave them direction. X.H. would acknowledge Mom as his mother, but A.B.M. did not have a bond with Mom. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (D)).

## D.    History of Substance Abuse

Mom admitted regularly using opiates beginning in 2019 and up until October 30, 2021, which was over nine months after the children were removed. Her service plan required her "to remain drug and alcohol free twenty-four (24) hours a day, seven (7) days a week and three hundred sixty-five (365) days a year," and it included a requirement for her to submit to random drug testing. She was admonished in her service plan, and by the trial court, that if she did not comply with her plan's requirements, she could lose her parental rights to her children. Despite the trial court's order for her to submit to random drug testing, and the Department's weekly request for Mom to be tested, Mom submitted to only three drug tests over a one-year period. *See*

TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)); *see also In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.) ("A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent."); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (same).

## E.    Domestic Violence in Relationships

Mom had a history of domestic violence with two separate partners: N.R., X.H.'s father, and K.G., Mom's female paramour. Mom acknowledged that from 2015 through 2021, her relationship with N.R., and then her relationship with K.G., involved domestic violence.

Mom had a multi-year relationship with N.R., who had domestic violence issues. After two of Mom's daughters were removed into the Department's care, N.R. took no steps to address his domestic violence, and Mom stayed in her relationship with N.R. As a result, and as the Department had warned her, Mom's parental rights to two of her daughters were terminated.

After Mom ended her relationship with N.R., she began a two-and-one-half year relationship with K.G. which Mom admitted was "unhealthy and violent." Mom stated she ended her relationship with K.G. in December 2020 when the Department told Mom "[she] wasn't able to be around [K.G.]" But in October 2021, K.G. appeared in a video call visit Mom had with the children. When Mom was asked if she "did that knowing that your relationship with [K.G.] was going to be detrimental to your case and any chance of having your children returned to you," Mom answered "Yes." Further, the address Mom gave at trial for her residence was the same address as K.G.'s. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (7), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)); *see also In re D.M.*, 452 S.W.3d at 471; *Walker*, 312 S.W.3d at 617 ("Evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue violent behavior in the future.").

**F.      Mom's Visits with the Children**

From the time X.H. and A.B.M. were removed until trial, Mom attended about 25% of her scheduled visits.  She said she missed a few of the visits because she had COVID.  Sometimes friends or family took her to the visits, but she missed other visits because she did not have bus fare.  *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

**G.      Providing for the Children's Needs**

Mom's plan required her to "maintain legal and verifiable income to be able to financially support her children."  Mom did not provide proof of employment or income, but at trial, she testified that "I just got a job, yesterday, as a housekeeper."  And there was no evidence that, from the time they were removed, Mom provided any support for her children.  *See* TEX. FAM. CODE ANN. § 263.307(b)(11), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H), (I)).

**H.      Safe, Stable Housing**

Mom's plan also required her to establish and maintain safe and stable housing for the children.  The Department repeatedly tried unsuccessfully to determine where Mom was living.  After confirming that Mom was not living at two different places Mom said she was living, the Department's case worker concluded that Mom was actually homeless.

At trial, Mom testified she was living with her aunt in a one-bedroom apartment—which Mom admitted would not be an appropriate home for her and her children.  But the address Mom gave was the same address as K.G.'s—her allegedly former paramour.  *See* TEX. FAM. CODE ANN. § 263.307(b)(11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (G), (H)).

**I.      Children's Placement**

The children are currently living with fictive kin, their godmother, who is the foster placement (Foster Mom).

Before the children were taken into care, X.H. had angry, aggressive outbursts. He knew only a handful of words, and he could not speak in complete sentences. After one year with Foster Mom, who is taking X.H. to therapies as directed by the Department, X.H. is speaking in complete sentences, following directions from his teacher, helping the teacher in class, and no longer exhibiting inappropriate aggressive behaviors.

Foster Mom is ensuring all the children's needs are met, including their physical and emotional needs, and her teenage children are helping to care for X.H. and A.B.M. She testified that she will be able to meet X.H.'s and A.B.M.'s needs in the future. She added that she is willing to continue caring for the children indefinitely, and she wants to adopt them. The children are bonded to Foster Mom, and they are very happy living with her and her other children. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G)).

## J.     Ad Litem's Recommendation

The ad litem recommended that it was in the children's best interests that Mom's rights be terminated so that the children could continue to live with Foster Mom and be adopted by her. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G), (H)).

## K.     Sufficient Evidence

The trial court could have believed the testimony about (1) Mom's admitted history with the Department, including having her parental rights to two of her other children terminated; (2) Mom's admitted multi-year history of opiate abuse; (3) Mom's admitted six-year history of domestic violence with two different partners; (4) Mom's failure to obtain or provide safe, stable housing; and (5) Mom's failure to have meaningful contact with the children. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

It could also have believed the testimony that the children are doing well living with Foster Mom and that she is meeting the children's present needs and will meet all their future needs. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have "reasonably form[ed] a firm belief or conviction" that it was in the children's best interests for Mom's parental rights to be terminated. *See In re H.R.M.*, 209 S.W.3d at 108 (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interests-of-the-children finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Mom's sole issue.

## CONCLUSION

For the reasons given above, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[1] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[2] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Mom's course of conduct met subsections (E), (N), and (O):

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
. . . .
(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
(i) the department has made reasonable efforts to return the child to the parent;
(ii) the parent has not regularly visited or maintained significant contact with the child; and
(iii) the parent has demonstrated an inability to provide the child with a safe environment; [and]
(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or

temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1).

[3] <u>Legal Sufficiency</u>. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.*

[4] <u>Factual Sufficiency</u>. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[5] <u>Statutory Factors for Best Interest of the Child</u>. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

    (1)    the child's age and physical and mental vulnerabilities;

    (2)    the frequency and nature of out-of-home placements;

    (3)    the magnitude, frequency, and circumstances of the harm to the child;

    (4)    whether the child has been the victim of repeated harm after the initial report and intervention by the department;

    (5)    whether the child is fearful of living in or returning to the child's home;

    (6)    the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

    (7)    whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

    (8)    whether there is a history of substance abuse by the child's family or others who have access to the child's home;

    (9)    whether the perpetrator of the harm to the child is identified;

    (10)    the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

    (11)    the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

    (12)    whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

        (A) minimally adequate health and nutritional care;

        (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

        (C) guidance and supervision consistent with the child's safety;

        (D) a safe physical home environment;

        (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

        (F) an understanding of the child's needs and capabilities; and

    (13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[6] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

    (A) the desires of the child;

    (B) the emotional and physical needs of the child now and in the future;

    (C) the emotional and physical danger to the child now and in the future;

    (D) the parental abilities of the individuals seeking custody;

    (E) the programs available to assist these individuals to promote the best interest of the child;

    (F) the plans for the child by these individuals or by the agency seeking custody;

    (G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).